IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAMON JONES, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 12-3365 |
| JOHN E. WETZEL, et al., | |
| Defendants. | |

### OPINION

**Slomsky, J.**                                                          **August 30, 2013**

## I.     INTRODUCTION

In May 1983, a jury convicted Plaintiff Damon Jones of first-degree murder in the Court

of Common Pleas of Philadelphia County.  It imposed a sentence of death.  On or about April 27,

2007, pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), Jones filed a collateral

attack on his death sentence.  On August 3, 2009, the PCRA Court granted him a resentencing

hearing.  While awaiting resentencing, he remained in the Capital Case Unit ("CCU"), or what is

commonly referred to as "death row."

On June 17, 2012, Plaintiff filed the instant action, requesting injunctive relief that he be

removed from death row, and compensatory relief under 42 U.S.C. §§ 1983 and 1985 for alleged

violations of his civil rights.[1]  (Doc. No. 3.)  The Complaint names as Defendants R. Seth

Williams, Philadelphia District Attorney (the "District Attorney"), and John and Jane Doe, who

are alleged to be affiliated with the District Attorney's office.  The Complaint also names as

Defendants John Wetzel, the Pennsylvania Secretary of the Department of Corrections, Michael

---

[1]On December 14, 2012, after Plaintiff commenced this action, the PCRA Court granted
Plaintiff's motion and sentenced him to life imprisonment.  On January 17, 2013, Plaintiff was
removed from death row and transferred to the general prison population.

Wenerowicz, Superintendent of the State Correctional Institution at Graterford ("SCIG"), Jay

Lane, SCIG Deputy Superintendent, Thomas Bolton, Unit Manager, Gerald Kelly, Unit

Counselor, Francis Feild, a Major at SCIG, and Robin Lewis, Department of Corrections Chief

Hearing Examiner (collectively "Commonwealth Defendants").[2]

On February 6, 2013, the District Attorney and Commonwealth Defendants filed Motions

to Dismiss. (Doc. Nos. 22, 25.)  For reasons that follow, the Court will grant both Motions.

## II.    BACKGROUND

In May 1983, a jury convicted Plaintiff of two counts of first-degree murder.  (Doc. No.

22 at 3.)  In 1987, he was sentenced to death on the murder convictions.  (Id. at 4.)  On May 21,

1992, the Pennsylvania Supreme Court affirmed his death sentence.  (Id.)  After exhausting his

appellate remedies, Plaintiff filed a PCRA petition.  (Doc. No. 25-1 at 3.)  On August 3, 2009,

the PCRA Court vacated Plaintiff's death sentence and granted him a resentencing hearing.

(Doc. No. 3 at 17.)

After the PCRA Court granted Plaintiff a resentencing hearing, Plaintiff remained in

CCU.  (Doc. No. 3 at 17.)  Plaintiff alleges that the Pennsylvania Department of Corrections

("DOC") characterizes a "capital case inmate" as follows:

> A Capital Case inmate is defined as follows:  Capital Case — And [sic] inmate
> (1) physically committed to the Department of Corrections under a sentence of
> Capital Punishment; (2) pending sentencing under a jury recommendation for
> Capital Punishment; or (3) whose sentence of Capital Punishment has been
> vacated, but is awaiting re-sentencing where a sentence of Capital Punishment
> may be re-imposed.

(Id. at 9.)

Inmates held in CCU are placed in solitary confinement and allowed four personal visits

per month.  (Id. at 11–13.)  During a number of these visits, Plaintiff had the opportunity to meet

---

[2] The Complaint refers to Thomas Bolton and Gerald Kelly by their last names only.
Commonwealth Defendants have supplied the first names in their Motion to Dismiss.

with his attorney.  (Id.)  Due to the layout of the visiting rooms used to meet with defense

counsel, Plaintiff contends that other visitors, prisoners, and guards could overhear his

conversations with counsel.  (Id.)  Because of the lack of privacy, he was forced to cut short

several sessions with his lawyer.  (Doc. No. 33 at 52.)

   While awaiting resentencing, Plaintiff filed grievances using the DOC internal grievance

system.  (Doc. No. 9 at 2.)  Plaintiff filed grievances with the Commonwealth Defendants from

June 2010 to February 2012.  (Doc. No. 3 at 8.)  Each of Plaintiff's grievances state, generally,

that because the PCRA Court vacated his death sentence, he should no longer be held in CCU,

but should instead be treated as a pretrial detainee and moved to the general prison population.

(Id.)

   On June 8, 2010, Defendant Wenerowicz denied one of Plaintiff's grievances, stating,

"[Plaintiff ] had been 'received in DOC custody in 1984 for his current offenses,' and 'per DOC

policy' he is 'held in single [cell] status.'"  (Doc. No. 3 at 8.)  On January 17, 2012, Unit

Counselor Gerald Kelly refused Plaintiff's request for a hearing to contest the disposition of his

previous grievances.  (Doc. No. 9 at 3.)

   Plaintiff contends that on or about January 18, 2012 through February 29, 2012, Unit

Counselor Gerald Kelly, Unit Manager Thomas Bolton, Deputy Superintendent Jay Lane, and

Major Francis Feild all explained to Plaintiff that "there was [sic] no exceptions" for him to be

released to general population "due to Capital Case Policy."  (Doc. No. 3 at 8.)  Defendant

Bolton informed Plaintiff to "consult your lawyer" because "until [the records department]

receives the Court information nothing will happen."  (Id.)  Later, Defendants Lane and Feild

reiterated the responses of the other Commonwealth Defendants stating, "there was no exception

for [plaintiff] to be release [sic] in [general population] 'due to Capital Case policy.'"  (Id.)

On March 15, 2012, Defendant Wenerowicz denied Plaintiff's appeal of Defendants Lane

and Feild's decision.  Defendant Wenerowicz's denial of Plaintiff's appeal contained an excerpt

from Section 6.5.8 of the DOC Capital Case Procedures Manual, which states:

> In the event that an order is received modifying the sentence of a Capital Case
> inmate to life imprisonment due to a re-sentencing proceeding held as the result of
> an appeal or Post Conviction Relief Act, or as the result of a commutation, the
> facility Records Supervisor must determine whether the order is valid and
> whether the District Attorney intends to appeal the order.  If the District Attorney
> intends to appeal, the inmate shall not be moved from the Capital Case unit until
> the appeal is resolved.

(Doc. No. 3 at 8–9.)

On April 17, 2012, Plaintiff filed another grievance, which was denied by Defendant

Lewis.  (Doc. No. 9 at 3.)  Plaintiff alleges that Commonwealth Defendants denied all of his

grievances in a perfunctory manner.  (Doc. No. 33 at 49.)

As noted above, on June 17, 2013, Plaintiff filed the Complaint against the District

Attorney, John and Jane Doe, and Commonwealth Defendants.  (Doc. No. 3.)  On August 1,

2012, Plaintiff filed an Amended Complaint.  (Doc. No. 9.)  The Complaint and Amended

Complaint do not allege clear, organized claims against Defendants.  Moreover, Plaintiff's

Opposition to Defendants' Motions to Dismiss (Doc. No. 33) alleges additional facts that

supplement the allegations initially plead in the Complaint and the Amended Complaint.  Despite

the imprecision of Plaintiff's claims against Defendants, the Court is obligated to discern the

facts alleged in the Complaint, the Amended Complaint, and Plaintiff's Opposition to

Defendants' Motions to Dismiss, and to consider them in the light most favorable to Plaintiff.[3]

---

[3] The Court will consider all facts alleged in the Complaint, the Amended Complaint, and
Plaintiff's Opposition to Defendants' Motions to Dismiss the Amended Complaint, which sets
forth facts Plaintiff apparently seeks to have incorporated into the Amended Complaint.  Because
Plaintiff is a pro se litigant, he is entitled to deference in his filings and is held "to less stringent
standards than formal pleadings by lawyers."  United States v. Bradley, 505 F. App'x 220, 221
n.1 (3d Cir. 2012) (quoting Haines v Kerner, 404 U.S. 519, 520 (1972)).

Considering these filings in this light, Plaintiff appears to allege five Counts[4]:  Counts I–IV, civil rights claims arising under 42 U.S.C. § 1983,[5] and in Count V, a conspiracy to violate Plaintiff's civil rights under § 1985.[6]

In Count I, alleging a claim under § 1983 against the District Attorney, Plaintiff argues he was denied a speedy resentencing in violation of his Sixth Amendment rights.  (Doc. No. 3 at 17.)  He contends the District Attorney "was and is the sole cause for the unreasonable delay in [P]laintiff's sentencing trial."[7]  (Id.)

In Count II, alleging a claim under § 1983 against Commonwealth Defendants, Plaintiff asserts he was denied the attorney-client privilege in violation of his First, Sixth, and Fourteenth Amendment rights.  (Doc. No. 3 at 13.)  He contends that the lack of privacy in the visitation rooms permitted other people to overhear his private conversations with counsel in violation of his civil rights.  (Id.)

---

[4] Plaintiff does not organize his claims into counts, but the Court will do so in this Opinion for the sake of clarity.

[5] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[6] 42 U.S.C. § 1985 provides: "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

[7] It appears that Plaintiff also alleges in Count I claims against John and Jane Doe Defendants.

In Count III, alleging a claim under § 1983 against Commonwealth Defendants, Plaintiff argues his confinement on death row pending a resentencing hearing is a form of excessive punishment in violation of his Eighth Amendment rights.  (Doc. No. 3 at 16.)

In Count IV, alleging a claim under § 1983 against Commonwealth Defendants, Plaintiff asserts he was denied substantive and procedural due process in violation of his Fourteenth Amendment rights.  He contends the Commonwealth Defendants denied his grievances regarding his confinement in CCU in a perfunctory manner, which denied him a liberty interest. (Doc. No. 9 at 3.)

In Count V, a claim under § 1985 against all Defendants, Plaintiff alleges that Defendants conspired to "willfully and maliciously . . . subject [P]laintiff to the harsh conditions and/or disabilities of solitary confinement and death row . . . ."  (Doc. No. 3 at 16, 19.)

Plaintiff requests that the Court grant him the following relief:  (1) vacate his conviction, or remove him from death row to the general prison population; (2) award compensatory damages in excess of $75,000, plus punitive damages and attorney fees; and (3) rule on the constitutionality of the DOC's policy of holding him on death row while awaiting resentencing, after his initial death sentence was vacated.  (Doc. No. 33 at 23–24.)

On December 14, 2012, after the Complaint was filed, the PCRA Court resentenced Plaintiff to life in prison.  (Doc. No. 25-1 at 49.)  At the resentencing hearing, the court ordered that Plaintiff "was to be taken off death row."  (Doc. No. 22 at 4.)  On January 17, 2013, Plaintiff was moved from CCU to the general prison population.  (Doc. No. 33 at 15.)

On February 6, 2013, the District Attorney filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 22), and the Commonwealth Defendants filed a

Motion to Dismiss pursuant to Rules 12(b)(1)[8] and 12(b)(6).  (Doc. No. 25.)  On May 13, 2013, Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss.  (Doc. No 33.)

The Court has considered the Complaint (Doc. No. 3), Amended Complaint (Doc. No. 9), District Attorney's Motion to Dismiss (Doc. No. 22), Commonwealth Defendants' Motion to Dismiss (Doc. No. 25), and Plaintiff's Opposition to Defendants' Motions to Dismiss (Doc. No. 33).  For the reasons that follow, the Court will grant the District Attorney's Motion to Dismiss (Doc. No. 22) and Commonwealth Defendants' Motion to Dismiss (Doc. No. 25).

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

---

[8] Commonwealth Defendants argue in their Motion to Dismiss that because official capacity claims against state employees cannot be brought in federal court under the Eleventh Amendment, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  In Plaintiff's Opposition to Defendants' Motion to Dismiss, he withdraws his official capacity claims against Commonwealth Defendants.  (Doc. No. 33 at 35.)  Plaintiff's withdrawal of the official capacity claims renders a ruling on the Commonwealth Defendants' arguments under Rule 12(b)(1) moot.

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## IV.    ANALYSIS

### A.    Count I:  Claims Against The District Attorney

#### 1.    Plaintiff's Sixth Amendment Claim Lacks Merit

To the extent Plaintiff alleges the District Attorney and unnamed John and Jane Doe were responsible for delaying his resentencing, the claim lacks merit.  A review of the docket sheet of Plaintiff's state criminal case, and specifically the entries concerning the resentencing,[9] reveals

---

[9] The Court may consider the docket sheet because "under certain circumstances . . . it is permissible for a court to consider matters of 'public record' in ruling on a motion to dismiss.  A prerequisite to consideration of an admittedly authentic public document as a part of a motion to dismiss is that the plaintiff's claim relies on that document."  Stratechuk v. Bd. of Educ., 200 F. App'x 91, 94 (3d Cir. 2006) (quoting PBGC v. White Consol. Indus., Inc., 998 F.2d 1192, 1196–97 (3d Cir. 1993)); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that a document must be integral to or explicitly relied upon in the complaint to be subject to consideration at the motion to dismiss stage).

that Plaintiff's counsel, either in conjunction with the prosecution or individually, requested each of the continuances that delayed the proceedings.  (Doc. No. 25-1.)  Additionally, the District Attorney's name does not appear on the Docket Sheet, suggesting he was not personally involved in any of the requested or stipulated continuances.  For a defendant to be held liable under § 1983, he must have personal involvement in the incident.

Even if the District Attorney requested or was involved in the requests for continuances, Plaintiff's claim still fails.  In Slaughter v. City of Philadelphia, No. 94-2329, 1995 WL 12060, at *4 (E.D. Pa. Jan. 12, 1995), the court stated, "it is not a request but the granting of a continuance by a judge which causes delay."  Under this persuasive reasoning, the cause of the delay was not the District Attorney but the judge ruling on the continuance requests.  Therefore, Plaintiff's Sixth Amendment claim against the District Attorney and John and Jane Doe lacks merit.

### 2.    The District Attorney Is Entitled To Absolute Immunity

Count I also must be dismissed against the District Attorney because he has absolute immunity from suit.  Certain officials preform special functions which "deserve absolute protection from damages liability."  Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993).  State prosecutors are entitled to absolute immunity in their role as advocates in actions preliminary to the initiation of a prosecution, in the preparation for the initiation of a prosecution, and during judicial proceedings.  Buckley, 509 U.S. at 272–73.

Here, Plaintiff alleges the District Attorney caused the resentencing hearing delay because of a failure to "file any further papers."  (Doc. No. 3 at 17.)  Filing papers falls within the District Attorney's role as an advocate for the state and as an act done in preparation of a prosecution or an act made during a judicial proceeding.  See Kalina v. Fletcher, 522 U.S. 118, 129 (1997) (holding that activities in connection with the preparation and filing documents with

the court are protected by absolute immunity).  Therefore, since the District Attorney is entitled

to absolute immunity from suit, he will be dismissed as a defendant in Count I.

**B.      Claims Against Commonwealth Defendants**

**1.      Plaintiff's Claim For Injunctive Relief Is Moot**

Plaintiff sought injunctive relief, requesting that he be transferred from CCU to the

general prison population.  On January 17, 2013, Plaintiff was transferred to the general

population.  (Doc. No. 33 at 13.)  Therefore, his request for injunctive relief is now moot and

will be dismissed.  See Mollett v. Leicth, 511 F. App'x 172, 174 (3d Cir. 2013) (stating that a

request for injunctive relief is moot if the Court is unable to give meaningful relief).

**2.      Count II:  Violation Of The Right To Private Communications With
              Counsel**

Count II asserts another claim under 42 U.S.C. § 1983.  Plaintiff asserts that he was

denied his First, Sixth, and Fourteenth Amendment rights by Commonwealth Defendants

because he did not have access to a confidential space to meet with counsel while preparing for

his resentencing.[10]  (Doc. No. 33 at 52.)  Plaintiff alleges he was forced to visit with his attorneys

and their aids in locations where other prisoners were able to overhear his discussions.  (Id.)  In

this situation, Plaintiff had to end his visits, because he did not know the inmates and did not

want unknown people to overhear his discussions with counsel.  (Id.)  This claim is barred,

however, for two reasons.  First, Plaintiff has failed to exhaust his administrative remedies.

Second, Commonwealth Defendants have qualified immunity.

---

[10] The original Complaint, in a cursory manner, mentions the allegation regarding a lack of
privacy while meeting with counsel.  (Doc. No. 3 at 13–14.)  Although Commonwealth
Defendants did not address this allegation in their Motion to Dismiss, they seek dismissal of the
"entirety" of Plaintiff's claims.  (Doc. No. 25 at 16.)  In Plaintiff's Response in Opposition to the
Motion, he expanded upon his allegation pertaining to the lack of privacy with counsel.  (Doc.
No. 33 at 52.)

**a.**   **Plaintiff Has Failed To Exhaust His Administrative Remedies With Regard To Count II**

Although Plaintiff filed grievances with prison officials complaining about his confinement in CCU while awaiting resentencing, he does not allege that he filed grievances complaining about his alleged lack of private communications with counsel.  42 U.S.C. § 1997e(a) provides:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Here, because Plaintiff has not exhausted his administrative remedies with regard to the alleged lack of private communications with counsel, this claim is barred.

**b.**   **Plaintiff's Claims Under Count II Lack Merit Because He Did Not Suffer An "Injury In Fact" And Commonwealth Defendants Have Qualified Immunity**

Notwithstanding the administrative bar on this claim, the claim also lacks merit.  In Telepo v. Martin, No. 08-2132, 2009 WL 2476498 (M.D. Pa. Aug. 12, 2009) aff'd, 359 F. App'x 278 (3d Cir. 2009), the court analyzed a claim similar to the instant one.  In that case, the plaintiff advanced two arguments.  First, he argued that he was denied his right of access to the courts, as required under Lewis v. Casey, 518 U.S. 343 (1996) and Bounds v. Smith, 430 U.S. 817 (1977). The court in Telepo found that the right of access claim lacked merit because the plaintiff had not shown that "his inability to meet in private with the public defender . . . prevented him or frustrated his efforts in filing a direct or collateral challenge to his conviction or sentence, a habeas petition, or a claim under Section 1983," and therefore he had not demonstrated an "injury in fact."  Telepo, 2009 WL 2476498, at *6.

In this case, to the extent Plaintiff makes a claim that he was denied the right of access to the courts, that claim fails because, as in Telepo, Plaintiff has not demonstrated an "injury in

11

fact." Plaintiff, through his counsel, prevailed in his efforts before the PCRA court to vacate his death sentence. Therefore, his alleged inability to have private conversations with counsel was not an "injury in fact." The meetings with counsel resulted in a successful overturning of his death sentence and Plaintiff's placement in the general prison population.

The second argument advanced by the plaintiff in Telepo is that he was denied the right to confidential communications with his attorney. The court in Telepo recognized that in Williams v. Price, 25 F. Supp. 2d 623 (W.D. Pa. 1998), the court held that prisoners have a right to confidential communications with their attorney. In Telepo, however, the defendants were entitled to qualified immunity for this privacy claim. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." MFS, Inc. v. Dilazaro, 771 F. Supp. 2d 382, 448–49 (E.D. Pa. 2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A court uses a two-prong test to determine if a defendant is entitled to qualified immunity. First, a court considers "whether the facts that a plaintiff has alleged make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009). Second, if the plaintiff has satisfied this first prong, the court must decide "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007).

As the court in Telepo stated:

A prisoner's right to confidential communication with his attorney is clearly established and, for the purposes of analysis under Rule 12(b)(6), this court will assume that the defendants violated the plaintiff's right. Even assuming a violation by the defendants, the defendants are shielded by qualified immunity. In the absence of any authority supporting the proposition that failure to provide private consultation facilities to prisoners temporarily awaiting a hearing in a courthouse holding area [is a violation of a constitutional right,] this court cannot

say that a "reasonable official would understand that what he is doing violates that right" under the circumstances present in this case. . . .

Telepo, 2009 WL 2476498, at *8 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

There is nothing here to support the notion that it would be clear to a reasonable prison guard or prison official that permitting other prisoners to use the visiting area while Plaintiff was meeting with counsel would result in an unlawful violation of his constitutional right to private communications with his attorney.  See Curley, 499 F.3d at 207.  Plaintiff was provided with a space to meet with his attorney and his aids, and their efforts on his behalf were successful.  No facts are alleged to even suggest that counsel was hindered in representing Plaintiff.  Moreover, there is no allegation that Commonwealth Defendants chilled alternative lines of communication with his counsel — for instance, by opening and reading Plaintiff's mail to and from his attorney.  See Williams, 25 F. Supp. 2d at 629 ("[I]t is noted that the policy [of denying prisoners a private room to speak with counsel] is content neutral, and that an argument could be made that there are alternative means of exercising the right — prisoners can write confidential letters to their counsel.")  Therefore, on these facts, Commonwealth Defendants are entitled to qualified immunity on Count II, which will be dismissed.[11]

**3.     Count III: Plaintiff Fails To State An Eighth Amendment Claim**

Count III asserts a claim under the Eighth Amendment.  Plaintiff alleges that the violation of his Eighth Amendment rights are "based upon the Commonwealth [D]efendants' decision to continue to confine him on Death Row after his death sentences were vacated . . . ."  (Doc. No. 33 at 45.)  Plaintiff contends that his confinement was excessive punishment.

"A claim that punishment is excessive is judged not by the standards that prevailed . . . when the Bill of Rights was adopted, but rather by those that currently prevail."  Atkins v.

---

[11] Qualified immunity also bars Plaintiff's claims under Counts III, IV, and V.  The Court will address the merits of each of these claims, infra.

<u>Virginia</u>, 536 U.S. 304, 312 (2002).  "The 'clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures.'" <u>Id.</u> (quoting <u>Penry v. Lynaugh</u>, 492 U.S. 302 (1989)).

61 Pa. Cons. Stat. § 4303 provides:

> Upon receipt of the [execution] warrant [from the Governor], the secretary [of corrections] shall, until infliction of the death penalty or until lawful discharge from custody, keep the inmate in solitary confinement.  During the confinement, no person shall be allowed to have access to the inmate without an order of the sentencing court, except the following:
> (1) The staff of the department.
> (2) The inmate's counsel of record or other attorney requested by the inmate.
> (3) A spiritual adviser selected by the inmate or the members of the immediate family of the inmate.

The Pennsylvania General Assembly also vests authority with DOC to determine how and where to hold inmates.  DOC regulations state:  "An inmate does not have a right to be housed in a particular facility or in a particular area within a facility."  37 Pa. Code § 93.11(a).  The Complaint quotes DOC provisions defining a Capital Case inmate as any inmate "whose sentence of Capital Punishment has been vacated, but is awaiting re-sentencing where a sentence of Capital Punishment may be re-imposed."  (Doc. No. 3 at 9.)  The DOC Capital Case Procedure Manual[12] section regarding sentence modifications provides:

1.   In the event that an order is received modifying the sentence of a Capital Case inmate to life imprisonment due to a resentencing proceeding held as the result of an appeal or Post Conviction Relief Act, or as the result of a commutation, the facility Records Supervisor must determine whether the order is valid and whether the District Attorney intends to appeal the order.

2.   If the District Attorney intends to appeal, the inmate shall not be moved from the Capital Case unit until the appeal is resolved.  However, the inmate may be moved from the Capital Case unit, if the District Attorney does not file an appeal within 30 days.

3.   If the District Attorney does not intend to appeal and if the inmate does not remain subject to an execution sentence as the result of a prosecution other

---

[12] The Capital Case Procedures Manual is a public document that Plaintiff relied upon in the Complaint.  (<u>See</u> Doc. No. 3 at 8–9.)  Therefore, the Court may consider it on a Motion to Dismiss.

> than the sentence modified in the order, the inmate may be moved from
> the Capital Case housing unit.

(Doc. No. 25-3.)

On August 3, 2009, Plaintiff's death sentence was vacated and he remained a Capital

Case inmate consistent with DOC policy.  On December 14, 2012, Plaintiff's death sentence was

modified to a life sentence.  Thereafter, on January 17, 2013, he was transferred to general

population.  This timeline is consistent with current DOC regulations and Pennsylvania law.

Moreover, the policies at issue here are consistent with current contemporary standards as

embodied in Pennsylvania legislation and grounded in well-reasoned policy.  Thus, Plaintiff was

not subjected to excessive punishment, and does not allege a plausible violation of his Eighth

Amendment rights.  Count III will be dismissed.

### 4.        Count IV: Plaintiff Was Not Denied Due Process

Plaintiff alleges both procedural and substantive due process violations under the

Fourteenth Amendment.  His substantive due process claim relates to his belief that he was

denied a protected liberty interest when he was detained in CCU during his resentencing hearing.

His procedural due process claim pertains to Commonwealth Defendants' review of his

grievances.  Viewing the allegations in the Complaint most favorably to Plaintiff, neither due

process claim has merit.

### a.        Substantive Due Process

Plaintiff was not denied a liberty interest when he remained in CCU pending his

resentencing hearing.  "In evaluating the constitutionality of conditions or restrictions of pretrial

detention that implicate only the protection against deprivation of liberty without due process of

law . . . the proper inquiry is whether those conditions amount to punishment of the detainee."

Bell v. Wolfish, 441 U.S. 520, 535 (1979).  "If a particular condition or restriction of pretrial

detention is reasonably related to a legitimate governmental objective, it does not . . . amount to punishment." Contant v. Sabol, 431 F. App'x 177, 178–79 (3d Cir. 2011).  Here, Commonwealth Defendants had a legitimate interest in housing Plaintiff in the CCU.  At the time, he was a Capital Case inmate.  Defendants followed Pennsylvania law and DOC regulations, as well as the DOC Capital Case Procedures Manual.  Thus, Plaintiff's substantive due process claim lacks merit.

### b.    Procedural Due Process

When a plaintiff sues under 42 U.S.C. § 1983 for failure of a state agency to provide procedural due process, the court must analyze:  "(1) whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).  Plaintiff does not contend that the grievance system is inadequate,[13] but that his grievance was denied in a "perfunctory manner, paying no regard to the actual circumstances of his case."  (Doc. No. 33 at 49).

The facts alleged do not support Plaintiff's assertion that his grievances were denied in a perfunctory manner.  Plaintiff and Commonwealth Defendants agree that Plaintiff had access to the grievance system, used the grievance system, appealed his grievance, and his grievances were considered and were denied on appeal.  (Doc. No. 3 at 26; Doc. No. 25 at 11.)  The responses to his grievances state that Plaintiff, as a Capital Case inmate, was not entitled to be transferred to general population unless his sentence was overturned in court.  (Doc. No. 9 at 3.)

---

[13] The Third Circuit has held that the DOC's grievance procedure provides an adequate remedy to inmates who allege deprivation of a constitutional right, and comports with due process under the Fourteenth Amendment.  See Durham v. Dep't of Corr., 173 F. App'x 154, 157 (3d Cir. 2006).

The responses are well reasoned, give due regard to Plaintiff's case, and provided Plaintiff with alternative avenues to pursue a challenge to his conditions of confinement.  (Doc. No. 3 at 8–9.)

In sum, Plaintiff had access to the DOC grievance system, he used the DOC grievance system in its entirety, and he received accurate, reasoned, and prompt responses from the Commonwealth Defendants.  Plaintiff has not stated a plausible claim that Commonwealth Defendants denied his grievances in a perfunctory manner or deprived him of due process of law. Count IV will be dismissed.

### 5.      Count V: Plaintiff's Conspiracy Claim Lacks Merit

Count V alleges Commonwealth Defendants and the District Attorney conspired to violate Plaintiff's civil rights under the First, Sixth, Eighth, and Fourteenth Amendments in violation of 42 U.S.C § 1985.  In order to state a valid conspiracy claim, a plaintiff must allege an underlying constitutional injury.  Durham v. Dep't of Corr., 173 F. App'x 154, 157 (3d Cir. 2006).  Plaintiff has not shown an underlying constitutional injury.  Therefore, Count V must be dismissed.  See Dykes v. Se. Pa. Transp. Auth., 68 F.3d 1564, 1570 (3d Cir. 1995) (declining to address the merits of a conspiracy claim because the court concluded the complaint "fails to allege a cognizable violation of [the plaintiff's] due process rights").

### C.      Claims Against John And Jane Doe

Plaintiff has also named John and Jane Doe as Defendants.  Plaintiff mentions these Defendants in the Complaint (Doc. No. 3) only by stating:  "Defendants [the District Attorney and], John and Jane Doe was and is the sole cause for the unreasonable delay in [P]laintiff's sentencing trial [sic]."  (Doc. No. 3 at 17.)  Plaintiff appears to allege "John and Jane Doe" are affiliated with the District Attorney's office.  Id.

The claim that John and Jane Doe were partly responsible for delaying the resentencing hearing lacks merit for the same reasons the claims in Count I lack merit.  Moreover, when a motion to dismiss is granted for all named parties, it too must be granted for all unnamed parties. Johnson v. United States, 469 F. App'x 79, 81 n.3 (3d Cir. 2012).  Therefore, all claims will be dismissed against John and Jane Doe.

## V.   CONCLUSION

The District Attorney's Motion to Dismiss (Doc. No. 22) and Commonwealth Defendants' Motion to Dismiss (Doc. No. 25) will be granted.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAMON JONES,

              Plaintiff,

    v.

JOHN E. WETZEL, et al.,

              Defendants.

CIVIL ACTION
NO. 12-3365

## <u>ORDER</u>

**AND NOW**, this 30th day of August 2013, upon consideration of Defendant R. Seth Williams' Motion to Dismiss (Doc. No. 22), Defendants John E. Wetzel, Michael Wenerowicz, Jay Lane, Bolton, Kelly, Francis Feild, and Robin M. Lewis' Motion to Dismiss (Doc. No. 25), Plaintiff's Response in Opposition to Defendants' Motions to Dismiss (Doc. No. 33), and in accordance with the Opinion of the Court issued this day, it is **ORDERED** as follows:

1. Defendant R. Seth Williams' Motion to Dismiss (Doc. No. 22) is **GRANTED**.

2. Defendants John E. Wetzel, Michael Wenerowicz, Jay Lane, Thomas Bolton, Gerald Kelly, Francis Feild, and Robin M. Lewis' Motion to Dismiss (Doc. No. 25) is **GRANTED**.

3. John and Jane Doe Defendants are **DISMISSED**.

4. Any outstanding motions are **DENIED AS MOOT**.

5. The Clerk of Court shall close this case for statistical purposes.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.